THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTT NETTLETON,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

CASE NO. C19-1684-JCC

ORDER

15   This matter comes before the Court on Defendant's motion for summary judgment (Dkt.

16  No. 24). Having considered the parties' briefing and the relevant record, and finding oral

17  argument unnecessary, the Court hereby DENIES the motion for the reasons explained herein.

18  **I.    BACKGROUND**

19          This case arises from Plaintiff's termination following a workplace injury. (*See generally*

20  Dkt. No. 22.) Unless otherwise indicated, the following facts are undisputed. Plaintiff, who

21  worked for Defendant as a delivery driver for 28 years, informed Defendant on or about May 31,

22  2018 that he twisted his knee while on the job and was unable to perform his normal duties. (*Id.*

23  at 2.) Defendant, who runs a self-insured workers' compensation program, put Plaintiff on light-

24  duty work while Plaintiff sought medical treatment and recuperated from his injury. (*Id.*)

25  Defendant then removed Plaintiff from all service on June 28, 2018 and terminated Plaintiff on

26  July 5, 2018 (Dkt. Nos. 24 at 16, n. 57; 25 at 12, 14.)

1        Defendant's stated basis for Plaintiff's removal from service and termination was

2   dishonesty. (Dkt. No. 24 at 4.) The allegation relates to Plaintiff's erroneous time entry, coupled

3   with Plaintiff's subsequent communications regarding that same entry. (*Id.*) Specifically, while

4   Plaintiff was assigned to light-duty work while recuperating from his injury, he indicated on a

5   paper timesheet on June 8, 2018 that he arrived at Defendant's premises at 7:30 a.m. (*Id.* at 3–4.)

6   Normally Plaintiff would use a DIAD electronic device to contemporaneously track his time.

7   (Dkt. No. 25 at 7.) But while on light-duty work, Plaintiff used a paper timesheet. (*Id.*)

8        Clocking in at 7:30 would have been unusual; unless otherwise instructed, Plaintiff was

9   expected to clock-in at his normal shift time, which was approximately 8:50 a.m. (Dkt. Nos. 24-1

10   at 347, 26 at 30.) When questioned the following business day[1] by James DeMenezes, Plaintiff's

11   direct supervisor, Plaintiff did not indicate that his 7:30 time entry was erroneous. (Dkt. Nos. 27

12   at 5, 24-1 at 129.) Instead, Plaintiff told DeMenezes that he came in early to assist in pre-loading

13   but asserts that he never indicated *how* early he came in. (*Id.*)[2]

14        On June 22, 2018, Defendant began an investigation into the erroneous timesheet entry.

15   (Dkt. Nos. 24 at 3, 24-1 at 330, 25 at 5–6.) As part of the investigation, UPS Security Manager

16   Dave DeRousse met with Plaintiff on June 27, 2018. (Dkt. No. 24 at 3.) Plaintiff provides the

17   Court with an affidavit indicating that, when asked by DeRousse during this meeting whether

18   Plaintiff arrived at 7:30 on June 8th, Plaintiff indicated "if that's what the timecard shows, then

19   that must be when I started." (Dkt. No. 27 at 7.) "I said this because I assumed that the timecard

20   was probably correct." (*Id.*) DeRousse questioned Plaintiff about the door he would have used at

21   such an early hour and Plaintiff responded that he came through the public door. (Dkt. No. 24 at

22   3.) Plaintiff now claims that he "did not have a specific memory of entering the building 19 days

23   prior, so I said something to the effect of I probably would have come in thorough the customer

24

25       [1] June 8, 2018 was a Friday.

26       [2] Curiously, Defendant provides neither a declaration nor deposition testimony from
DeMenezes to support its summary judgment motion. (*See generally* Dkt. Nos. 24, 24-1.)

counter door . . . because that is what I thought was the most likely thing I would have done."
(Dkt. No. 27 at 8.) DeRousse showed Plaintiff video footage demonstrating that Plaintiff did not
come through the public door. (Dkt. No. 24 at 3.) According to Plaintiff, because he had no clear
memory of the events occurring on the morning of June 8th, he reviewed records provided by his
gym following his meeting with DeRousse. (Dkt. No. 27 at 8.) Based on those records, Plaintiff
concluded that he could not have arrived by 7:30 and that his paper entry, which he completed at
the end of the day rather than contemporaneously, was erroneous. (*Id.*) Plaintiff asserts that he
informed DeRousse of his discovery later that day. (*Id.*) The two met again the following day.
(*Id.*) It is undisputed that at this meeting Plaintiff agreed that the entry was erroneous, chalking it
up to a simple mistake. (Dkt. Nos. 24 at 4, 25 at 8.) Regardless, Defendant concluded that, based
on Plaintiff's previous statements, sufficient cause existed to terminate Plaintiff for dishonesty.
(*Id.*)

Plaintiff asserts that his termination for dishonesty was pretextual. (Dkt. No. 25 at 5–9.)
According to Plaintiff, Robert Gordon, who became Plaintiff's manager in the fall of 2017, is
evaluated on how many injuries employees incur and how many employees are assigned to light-
duty work. (*Id.* at 9.) Plaintiff alleges that, following the injury, Gordon made frequent harassing
comments regarding the severity of Plaintiff's injury and his need for light-duty work. (*Id.* at 5–
9.) According to Plaintiff, this was an effort to intimidate Plaintiff into returning early to regular
work. (*Id.*) On June 19, 2018, following the alleged harassment, Plaintiff filed a complaint
regarding Gordon's behavior with Defendant's hotline. (Dkt. No. 26 at 63–65.) While Plaintiff
later withdrew the complaint, Plaintiff alleges that he did so only after he learned that Gordon
had initiated the investigation into Plaintiff's timesheet three days later. (Dkt. No. 27 at 8.)
Plaintiff testifies that he withdrew the complaint in an effort to "calm things down." (*Id.*)

Plaintiff alleges that Gordon initiated the timesheet investigation in response to Plaintiff's
complaint. (Dkt. No. 25 at 5–6.) According to Plaintiff, Gordon then made misleading statements
during the investigation and was responsible for the final decision following the investigation to

terminate Plaintiff. (*Id.* at 5–9.) Plaintiff argues that Gordon's alleged harassment, timesheet investigation, and his termination were all in retaliation for his injury and request for light-duty work, *i.e.*, his workers' compensation claim. (*Id.*)

Plaintiff brought the following claims against Defendant following his termination: wrongful termination, retaliation and hostile work environment in violation of the Washington Law Against Discrimination ("WLAD"), and a violation of Washington's workers' compensation statute, Wash. Rev. Code § 51.48.025. Defendant moves for summary judgment on all claims. (Dkt. No. 24.) It asserts that Plaintiff's "dishonesty was the sole factor motivating the termination of his employment" and Plaintiff's allegations are "insufficient as a matter of law" to support any of his claims. (Dkt. No. 24 at 1.)

## II.   DISCUSSION

### A.   Summary Judgment Standard

The Court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party meets its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must "show[] that the materials cited do not establish the absence . . . of a genuine dispute" or "cit[e] to particular parts of . . . the record" that show there is a genuine dispute. Fed. R. Civ.

P. 56(c)(1). When analyzing whether there is a genuine dispute of material fact, the "court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Moreover, a "plaintiff in an employment discrimination action need produce very little evidence to overcome an employer's motion for summary judgment." *Chuang v. U. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). "This is because 'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Id.* (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir.1996)).

**B.      Wrongful Discharge Claim**

The tort of wrongful discharge against public policy is an exception to the general principle that employees in Washington are terminable at-will. *See Rose v. Anderson Hay & Grain Co.*, 358 P.3d 1139, 1141 (Wash. 2015). The tort applies here if Plaintiff can prove that his dismissal violated a clear mandate of public policy. *Id.* at 1142. This includes any of the following scenarios:

> (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.

*Id.* (quoting *Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 379 (Wash. 1996)).[3] Plaintiff's allegations fit into the final two scenarios: he alleges that he was terminated for exercising his workers' compensation rights and in retaliation for filing a complaint against Gordon regarding Gordon's alleged harassing behavior. (*See generally* Dkt. No. 22.)

Plaintiff must first establish a prima facie case that his exercise of his workers' compensation rights or that his whistleblowing was a "significant factor" in the decision to

---

[3] The Court agrees with Plaintiff regarding the inapplicability of the Perritt framework here. (*See* Dkt. No. 25 at 12–13.)

terminate him and/or to retaliate for filing his complaint. *Martin v. Gonzaga U.*, 425 P.3d 837, 844 (Wash. 2018). He can do so through circumstantial evidence. *Id.* This includes the "[p]roximity in time between the claim and the firing . . . coupled with evidence of satisfactory work performance and supervisory evaluations." *Wilmot v. Kaiser Aluminum and Chem. Corp.*, 821 P.2d 18, 29 (Wash. 1991). Also of relevance is a "pattern of retaliatory conduct." *Id.* Plaintiff meets this prima facie requirement. His termination was proximate in time to his injury—slightly more than a month—and he puts forth evidence that he received satisfactory evaluations prior to the injury, as well as evidence regarding Gordon's pattern of retaliatory conduct towards Plaintiff and others. (*See* Dkt. Nos. 26 at 10, 29; 27 at 3–7.)

Defendant must, therefore, articulate a legitimate non-retaliatory reason for Plaintiff's termination. *Wilmot*, 821 P.2d at 28. Defendant satisfies this requirement, alleging Plaintiff was terminated for dishonesty. (Dkt. No. 24-1 at 346.)

To withstand summary judgment, Plaintiff must next provide evidence that Defendant's stated reason is pretextual.  *Wilmot*, 821 P.2d at 31. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1221 (W.D. Wash. 2018) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)). A plaintiff satisfies his burden by offering sufficient evidence to create a genuine dispute of material fact that either (1) the defendant's stated reason is false, or (2) although the defendant's reason is legitimate, discrimination or retaliation was still a substantial factor motivating the adverse employment action. *See Scrivener v. Clark Coll.*, 334 P.3d 541, 546 (Wash. 2014).

Plaintiff provides sufficient indications of pretext to survive summary judgment—21 to be exact. (Dkt. No. 25 at 15–18.) While some may be tenuous, a sufficient number provide a basis for a reasonable juror to conclude that Defendant's stated reason was, in fact, pretextual. This includes the following: (a) Gordon was incentivized to minimize the placement of

1    employees on light-duty work,[4] (b) Gordon was upset with Defendant for seeking such work, (c)

2    Gordon instigated the timesheet investigation either in retaliation for filing the complaint or, at a

3    minimum, based on a minor infraction, (d) Gordon impacted the outcome of the investigation,

4    and (e) while others may have been involved in the termination decision, it was effectively, if not

5    formally, Gordon's to make. (Dkt. Nos. 24-1 at 330; 26 at 59, 73, 103, 124–31, 133; 27 at 3–10.)

6         Accordingly, the Court DENIES Defendant's motion for summary judgment as to

7    Plaintiff's wrongful discharge claim.

8         **C.    WLAD Claim**

9         WLAD prohibits discrimination on the basis of a "physical disability." Wash. Rev. Code

10   § 49.60.180(2). Defendant concedes Plaintiff's injury represents such a disability. (Dkt. No. 24 at

11   16 n. 54.)

12             1.    Retaliation

13        Plaintiff must establish a prima facie case of retaliation. *Estevez v. Faculty Club of U. of

14   Washington*, 120 P.3d 579, 589 (Wash. App. 2005). To do so he must show that (1) he engaged

15   in statutorily protected activity; (2) the employer took some adverse employment action against

16   the employee; and (3) there is a causal link between the protected activity and the adverse

17   action." *Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 786 (Wash. App. 2013). Plaintiff satisfies

18   this requirement. First, he engaged in two protected activities: seeking light-duty work following

19   his injury and lodging a complaint on Defendant's hotline regarding Gordon's alleged

20   harassment. Second, Defendant took three adverse actions: the timesheet investigation, removing

21   Plaintiff from service, and terminating Plaintiff. Third, as discussed above, there is a causal link

22   between the protected activities and the adverse actions: proximity in time to his injury and

23   satisfactory performance reviews prior to the injury. *See supra* Part II.B. Because Defendant has

24   

25        [4] Defendant argues that Plaintiff never discussed workers' compensation directly with
     Gordon. (Dkt. No. 29 at 6.) This is a distinction without meaning, as a reasonable jury could
26   conclude that lost time injuries, for which Gordon's performance was evaluated, is analogous to
     workers' compensation claims. (*See* Dkt. No. 26 at 127.)

articulated a reason for the adverse actions—dishonesty—to survive summary judgment,

Plaintiff must present sufficient evidence for a jury to conclude that Defendant's stated reason is

pretextual. *Currier v. Northland Services, Inc.*, 332 P.3d 1006, 1011 (Wash. App. 2014). Plaintiff

meets this burden, as the same evidence Plaintiff puts forth to support his wrongful termination

claim applies equally here. *See supra* Part II.B.

Accordingly, the Court DENIES Defendant's motion for summary judgment as to

Plaintiff's WLAD retaliation claim.

2.     Hostile Work Environment

A "plaintiff in a disability based hostile work environment case must prove (1) that he or

she was disabled within the meaning of the antidiscrimination statute, (2) that the harassment

was unwelcome, (3) that it was because of the disability, (4) that it affected the terms or

conditions of employment, and (5) that it was imputable to the employer." *Robel v. Roundup

Corp.*, 59 P.3d 611, 616 (Wash. 2002). Primarily at issue is the fourth element. To establish a

hostile work environment claim, the allegations of mistreatment must be severe; "the WLAD is

not intended as a general civility code." *Alonso v. Qwest Commun. Co.*, LLC, 315 P.3d 610, 617

(Wash. App. 2013). "It is not sufficient that the conduct is merely offensive." *Clarke v. State

Atty. Gen.'s Off.*, 138 P.3d 144, 153 (Wash. App. 2006). It must be "sufficiently pervasive so as

to alter [a plaintiff's] conditions of employment." *Id.* Plaintiff presents sufficient evidence from

which a reasonable juror could conclude he meets this standard.

Plaintiff alleges that, up to the point he was terminated, Gordon repeatedly yelled at him

and accused him of faking his injury. (Dkt. No. 27 at 3–7.) As a result, Plaintiff called the

company's internal helpline on two separate occasions. (*Id.* at 6–7.) Gordon's attitude towards

Plaintiff is demonstrated in an internal e-mail, where Gordon claimed, without evidence, that

Plaintiff simply intends to "string out" the light-duty work "until we find out what's going to

happen with the contract on August 1st . . . I guarantee you that's his plan. He is not interested in

handling this quickly." (Dkt. No. 26 at 59.) Moreover, the contents of Plaintiff's complaint with

Human Resources further support Plaintiff's allegations. (Dkt. No. 26 at 63–65 (describing incidents where "on three separate occasions" Gordon "threatened to take [Plaintiff] off temporary work and have him stay home," another incident where Gordon called Plaintiff a "fake and a liar" when he brought in a doctor's note and, finally, an occasion where Gordon "screamed at [Plaintiff] from about eighty feet away").) The fact that Plaintiff later withdrew the complaint is not relevant, in light of Plaintiff's claimed fears that Gordon's receipt of the complaint was, in fact, what triggered the investigation over Plaintiff's seemingly innocuous timesheet error. (*See* Dkt. No. 27 at 8.)

Accordingly, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's WLAD hostile work environment claim.

### D.      Workers' Compensation Violation

Under Washington law, an employee cannot be discharged or discriminated against for filing a workers' compensation claim. Wash. Rev. Code § 51.48.025(1). Plaintiff must establish a prima facie case that he: (1) exercised his workers' compensation rights, (2) was terminated, and (3) a casual connection between the two exist. *Anica v. Wal-Mart Stores, Inc.*, 84 P.3d 1231, 1237 (Wash. App. 2004). "Proximity in time between the protected activity and the employment action when coupled with evidence of satisfactory work performance supports an assertion of retaliatory motive." *Id.* at 1238. As Defendant concedes, the same burden-shifting approach applicable to Plaintiff's workers' compensation and WLAD retaliation claims applies here. (Dkt. No. 29 at 8.) Therefore, for the same reasons that those claims survive summary judgment, *see supra* Parts II.B., II.C.1., so does Plaintiff's claim pursuant to Section 51.48.025.

Accordingly, the Court DENIES Defendant's motion for summary judgment as to Plaintiff's Section 51.48.025 claim.

## III.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment (Dkt. No. 24).

1

2      DATED this 20th day of January 2021.

3

4

5

6      John C. Coughenour
       UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
C19-1684-JCC
PAGE - 10